1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF TEXAS

3                   HOUSTON DIVISION

4  UNITED STATES OF AMERICA          .
                                     .   Criminal Action
5  VERSUS                            .   No. H-20-CR-658-1
                                     .
6  CHACATHRON CAHEE,                 .   Houston, Texas
                                     .   April 21, 2022
7                                    .   9:01 a.m.
                       Defendant.    .
8  . . . . . . . . . . . . . . . . . .

9                 TRANSCRIPT OF PROCEEDINGS

10        BEFORE THE HONORABLE ALFRED H. BENNETT

11                     SENTENCING

12 APPEARANCES:

13 FOR THE UNITED STATES OF AMERICA:

14        Mr. Michael Edward Day
          Assistant United States Attorney
15        UNITED STATES ATTORNEY'S OFFICE
          1000 Louisiana
16        Suite 2300
          Houston, Texas   77002
17        713.567.9000

18 FOR THE DEFENDANT:

19        Mr. Kevin McGuire Cobb
          Assistant Federal Public Defender
20        FEDERAL PUBLIC DEFENDER
          Southern District of Texas
21        Lyric Office Centre
          Post Office Box 61508
22        Houston, Texas   77208-1508
          (713) 718-4600
23

24
               PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
25        TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION


               Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   **THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT**
2   **ORDER.   UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE**
3   **OFFICIAL RATE.**

4   **GENERAL ORDER 94-15, UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF TEXAS.**
5

6   PROBATION OFFICER:

7       Ms. Cynthia Reyes

8

9

10

11

12

13

14   COURT REPORTER:

15           GAYLE L. DYE, CSR, RDR, CRR
             515 Rusk, Room 8004
16           Houston, Texas  77002
             713.250.5582
17

18

19

20

21

22

23

24

25

```
 1                          PROCEEDINGS
 2                         April 21, 2022
 3            THE COURT:  Have a seat.
 4               Cause Number 4:20-CR-658-1, United States of
 5   America versus Chacathron Cahee.
 6               Counsel, your appearances for the record.
 7            MR. DAY:  Good morning, your Honor.  Mike Day for the
 8   United States.
 9            MR. COBB:  Good morning, your Honor.  Kevin Cobb on
10   behalf of Ms. Cahee.
11               And I apologize.  Ms. Cahee -- I'm looking at a
12   text message at 8:59.  She said she has gone through security
13   and is coming up right now.  I apologize, but she's on her way.
14            THE COURT:  Very well.
15            THE DEFENDANT:  Good morning.
16            THE COURT:  And ma'am, what is your name?
17            THE DEFENDANT:  Chacathron Cahee.
18            THE COURT:  Let the record reflect that the defendant
19   is present and is represented by legal counsel.
20               Who is here from probation?
21            THE PROBATION OFFICER:  Your Honor, Cynthia Reyes with
22   the US Probation Office.
23            THE COURT:  Very well.
24               This is a sentencing hearing.  I want to briefly
25   describe the Court's sentencing procedures.  The Supreme Court
```

09:01:29  (line 5)
09:01:39  (line 10)
09:01:54  (line 15)
09:02:18  (line 20)
09:02:28  (line 25)

1   has held in *United States versus Booker* that the United States

2   Sentencing Guidelines are advisory, not mandatory for judges.

3   *Booker* requires the sentencing Court to consider guideline

4   ranges; but it permits the Court to tailor the sentence in light

09:02:44   5   of other statutory concerns, as well.

6           The Court, in exercising its sentencing

7   discretion, will rely on the factors set out in Section 3553(a)

8   to fashion an appropriate sentence to achieve the

9   Congressionally mandated purposes of sentencing as set forth in

09:02:58   10   the Sentencing Reform Act of 1984.

11          The Court will endeavor to faithfully apply the

12   directives within the guidelines in their entirety to determine

13   the total offense level and criminal history category under the

14   guidelines.  Throughout, the Court will exercise its discretion

09:03:15   15   to determine the appropriate sentence.

16          In so doing, the Court will give considerable

17   weight to the sentencing range calculated under the guidelines.

18   Any comments made by the Court during the course of this

19   sentencing are not to be construed as an indication that the

09:03:26   20   Court, in fact, believes that the guidelines are mandatory or

21   that they constrain the Court's ultimate sentencing discretion.

22          The standard of proof for factual findings in

23   connection with sentencing is preponderance of the evidence.  In

24   determining whether that standard is met, a presentence report

09:03:42   25   is generally considered sufficiently reliable to be considered

1  by the trial Court as evidence in making the factual

2  determinations required by the sentencing guidelines.

3              In this case, the Court has reviewed the

4  presentence investigation report, the addendum to the

09:04:03  5  presentence investigation report.  The Court notes a filing of a

6  joint objection to the presentence report, a separate filing by

7  the United States of objection to the presentence investigation

8  report motion for acceptance of responsibility.

9              The Court had a petition for action on condition

09:04:32  10  of pretrial release in its file, the summons for the criminal

11  action, the plea agreement, the sentence data sheet, as well as

12  the proffer.

13              Counsel for the Government, were there additional

14  items that the Court needed to review?

09:04:52  15              MR. DAY:  No, your Honor.

16              THE COURT:  Counsel for defense, were there additional

17  items that the Court needed to review?

18              MR. COBB:  No, your Honor.

19              THE COURT:  Counsel for the Government, were there

09:05:00  20  additional objections that you need to bring to the Court's

21  attention that will affect the guidelines calculation?

22              MR. DAY:  No, your Honor.

23              THE COURT:  Counsel for the defense, were there any

24  additional objections you need to bring to the Court's attention

09:05:10  25  that will affect the guideline calculation that you need to be

1  heard on?

2          MR. COBB:  If the Court will allow argument on the

3  joint motion, there is -- there are some things that I would

4  like to add.  I don't know if this is the time or not.

09:05:25  5          THE COURT:  It is.

6          MR. COBB:  So, your Honor, every day in civil cases,

7  plaintiffs and defendants meet in this courtroom -- or

8  courthouse, meet with judges and mediators; and they strike

9  deals; and that's what we've done in this criminal case.  But we

09:05:43  10  struck a deal that's tied to the facts.

11          The victim is FEMA.  FEMA is owed $35,678.

12  Health and Human Services --

13          THE COURT:  And .40 cents.

14          MR. COBB:  Yes, and .40 cents.

09:06:03  15          Health and Human Services is owed 7,000 and some

16  change which takes her just above the $40,000 on the loss chart.

17  So, she's at $43,000.  If the loss had been $94,999, she would

18  be in the same six level increase that she's getting being just

19  above $40,000.

09:06:25  20          So, that's why -- that's part of the reason why

21  we reached the agreement that we did.  We also knew inevitably

22  it's baked into the guideline.  She's getting a plus two points

23  for being a fraud in relation to a natural disaster.  That, in

24  addition to the fact that some of her criminal history is old,

09:06:46  25  it just barely gets in within the ten-year window.

1          The fact that she pled guilty and accepted

2   responsibility, as you saw in the report, she didn't give the

3   agents any trouble.  She immediately admitted to what she had

4   done.  The same here with the Court.

09:07:01   5          COVID slowed us down; but her intention was

6   always to plead guilty, which is what she did.  And that is why

7   we reached the agreement that we did, and I cited in my motion

8   some criminal cases, the US Supreme Court in *Huey versus United*

9   *States*, where the Supreme Court noted "The essence of a plea

09:07:24  10   agreement is that both the prosecution and the defense made

11   concessions to avoid potential losses."

12          And then, also, our circuit, the Fifth Circuit,

13   2004 opinion, *US v. Adams*:  "The mutual understanding reached by

14   the parties during plea negotiations is normally not detailed in

09:07:44  15   the original charging document and is more often gleaned from

16   any superseding indictment, plea agreements, and statements made

17   by the parties during plea and sentencing hearings."

18          And I understand probation has a role.  They put

19   the facts in there.  We agree with the facts.  No one --

09:08:00  20   everyone is getting their money.  We're agreeing that that total

21   loss amount, $43,000 and some change -- it's in the report -- is

22   what is owed and what she's going to have to pay.

23          But for guidelines purposes, the amount should be

24   the -- what is owed to FEMA, what is written in our plea

09:08:20  25   agreement the parties -- the lawyers negotiated; and we are

1   asking the Court -- we know that the Court doesn't have to; but

2   that plea agreement should have -- and the loss amount should be

3   below $40,000 leading to a four-level increase rather than a

4   six-level increase.

09:08:39   5   THE COURT:  Under the four-level increase, where do

6   you have the total offense level at that point?

7   MR. COBB:  The total offense level I don't have in

8   front of me.  The guidelines range goes to 10 to 16 months, but

9   probation could help me with the exact offense level.

09:08:57   10   THE PROBATION OFFICER:  Your Honor, it would be 13

11   because it doesn't include the acceptance.  If it does include

12   the acceptance, then it is 10 to 16 months.

13   THE COURT:  On the total -- no.  What would be the

14   offense level?  It's 13 without acceptance of responsibility?

09:09:12   15   THE PROBATION OFFICER:  Yes, your Honor.

16   THE COURT:  And then, with the acceptance of

17   responsibility, it becomes --

18   THE PROBATION OFFICER:  It goes down to 11.

19   THE COURT:  11, all right.

09:09:18   20   THE PROBATION OFFICER:  11, yes.

21   THE COURT:  Anything else, counsel?

22   MR. COBB:  We'll have more argument on what the

23   appropriate sentence is but nothing else for the objections.

24   THE COURT:  What say you?

09:09:28   25   MR. DAY:  Thank you, Judge.  We agree with what

1  defense counsel said as to the appropriate intended loss as well

2  as the total offense level of 11 with a guideline range of 10 to

3  16 months.

4              In reaching the agreement, the things we factored

09:09:47  5  in included her -- her criminal history which, for the most

6  part, is fairly limited, as well as her early acceptance of

7  responsibility.  And quite frankly, the fact that in the

8  guidelines that 40,000-to-95,000-dollar range, this intended

9  loss -- or the potential intended loss of 43,000 was -- 510.88

09:10:07  10  was much closer to the 40,000 than it was to the 95,000.

11              So, we did take into account those factors; and

12  we feel that this agreement was appropriate in this case.

13              THE COURT:  Very well.  As to the joint objections,

14  those objections are sustained.

09:10:49  15              Anything else, Mr. Cobb?

16              MR. COBB:  As for the sentence?

17              THE COURT:  Not yet.  Just the objections.  Any

18  additional objections?

19              MR. COBB:  The objections, nothing further.

09:11:03  20              THE COURT:  Ms. Cahee?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Your lawyer has just argued certain

23  objections to the Court.  First of all, have you received a copy

24  of the presentence investigation report?

09:11:12  25              THE DEFENDANT:  Yes, your Honor.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE COURT:  Have you discussed the same with your

2    lawyer?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Did your lawyer answer all of your

09:11:18    5    questions regarding the presentence investigation report?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Your lawyer, again, has just argued

8    certain objections.  Aside from his objections, do you

9    personally have any objections you need to bring to my

09:11:30    10    attention?

11        (Discussion off the record between Mr. Cobb and the

12    defendant.)

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Very well.  Thank you.

09:11:45    15          These are the Court's final guideline findings

16    and legal conclusions:  The total -- as to the acceptance of

17    responsibility, I believe that that has occurred.  So, the

18    total -- well, let me confer.

19          Ms. Reyes, did you say it goes to an 11 or a 10?

09:12:10    20          THE PROBATION OFFICER:  11, your Honor.

21          THE COURT:  11.

22          THE PROBATION OFFICER:  Yes.  We don't do the third

23    point.

24          THE COURT:  Right.

09:12:11    25          The total offense level is 11, the criminal

1   history category is II.  Based upon those determinations, the

2   guidelines provide for a term of imprisonment of 10 to 16

3   months, a term of supervised release of two to five years --

4           THE PROBATION OFFICER:  Yes.

09:12:27    5           THE COURT:  -- and a fine of $4,000 to $40,000,

6   restitution in the amount of $45,610.88, and a $100 special

7   assessment.

8               What is the Government's position on sentencing?

9           MR. DAY:  Thank you, your Honor.

09:12:42    10              With a program like FEMA that's aiding people

11  that are dealing with natural disasters and have been displaced

12  or are dealing with severe financial difficulties, there's a

13  importance to pay quickly and to pay timely, to get money to the

14  people that need it.

09:13:00    15              And that's where someone is willing to, I guess,

16  betray the system, take advantage of the system, and benefit

17  because, quite frankly, it's kind of a pay out and then, you

18  know, confirm later that it was legitimate in order to get the

19  money out as quickly and efficiently as possible.

09:13:17    20              And Ms. Cahee clearly took advantage of the

21  system and betrayed the faith that was put in her in submitting

22  a valid application.  And I think it went a step further in this

23  case because it wasn't just a misstatement or a lie or falsehood

24  on the application.  It went beyond that and lasted a span of

09:13:36    25  several months, which included fabricating receipts,

1  applications, and other documents that went on for a span of

2  several months.

3         Again, this is an important program with

4  important intentions; and that got betrayed in this -- in this

09:13:53  5  situation by Ms. Cahee.  That being said, she did accept

6  responsibility quickly in this case.  We feel that her criminal

7  history is pretty minor and limited.  And so, we are asking for

8  a sentence at the low end of the guideline range in this case

9  which will be ten months.

09:14:12  10        Again, we'd ask the Court to order the

11  restitution and incorporate the money judgment that was

12  previously granted by the Court.  We'd ask for a term of

13  supervised release which will allow her the opportunity to prove

14  -- to pay the restitution as well as prove to the Court that she

09:14:31  15  can abide by rules and conditions.

16        The Government does have concerns given the

17  violation in this case of her conditions of release that she can

18  do it.  But we'd ask the Court to give her one opportunity to

19  prove to the Court that she can follow rules and conditions of

09:14:48  20  supervised release.

21        Thank you.

22        THE COURT:  What is the defense's position on

23  sentencing?

24        MR. COBB:  We're asking the Court to consider a

09:14:56  25  downward departure or variance and a sentence of time served.

1    She was in custody from December 17, 2020, to December 18, 2020.

2    So, the guidelines are now within Zone C.  There would be an

3    incarceration component because she did two days; and we're

4    asking for the maximum amount of supervised release, a sentence

09:15:20    5    of five years supervised release --

6              THE COURT:  Just make sure I understand you, the time

7    served was two days?

8              MR. COBB:  Correct, your Honor.

9              THE COURT:  Okay, all right.

09:15:31    10              MR. COBB:  -- and the maximum time allowed for

11    supervised release to allow her to repay the money that she

12    owes.

13              So, as indicated in the presentence report, she's

14    been employed since 2018.  She's an uncert -- certified teacher

09:15:49    15    or a teacher's aide.  Teachers don't make very much money, and

16    teacher's aides certainly don't.  But she's finally getting to a

17    place where she has some savings, where she's more financially

18    solvent.

19              The presentence report also indicated that in the

09:16:05    20    past she has done some contract work for different oil and gas

21    companies.  She's doing interviews right now to find second jobs

22    or better paying work so that she can actually repay the money

23    that's owed.

24              She'll tell you in a minute in her own words but

09:16:23    25    at around the time that this case happened -- she's a single

1    mother -- she was in a desperate financial situation; and the

2    short version is she sold the house and she kept accepting the

3    payments.  And she's fully accepted responsibility for that, as

4    I mentioned.

09:16:45    5            She admitted -- as soon as the agents came and

6    talked to her, she timely pled guilty; and she knows what she

7    did was wrong.  And she's committed to repaying that money; but

8    to state the obvious, she can't do that from inside a jail cell.

9    And so, based on that, the fact that she's continuing to work,

09:17:06   10   she's looking for better paying employment, incarceration would

11   just destabilize her and make it more likely that the two

12   government victims in this case don't receive their money.

13           So, based on all of that, we ask the Court to

14   consider time served, two days, followed by five years of

09:17:30   15   supervised release.

16           THE COURT:  Ms. Cahee, this is going to be your

17   opportunity to address me and to tell me what you wish for me to

18   know.  Let me tell you at the outset, the fact -- in regards to

19   FEMA, just because where we live as a community, FEMA becomes a

09:17:55   20   more important agency because we on a yearly basis deal with a

21   threat of hurricanes.

22           As a matter of fact, in the last several years,

23   we've had several weather incidences where our fellow community

24   members were served by FEMA.  So, as the Government had pointed

09:18:16   25   out, there are real victims in this in the sense that funds that

1   you took were not available to others in need.

2           And so, we'd like to think of an endless supply

3   of money to and from FEMA; but your place in line moved somebody

4   in line one place back.  It had a real world impact.  I don't

09:18:51  5   take that lightly, nor does the community take that lightly.

6           There has to be a signal sent for those who would

7   attempt to defraud FEMA, to defraud these programs that are

8   intended to help our community that it's unacceptable.

9           Do you understand that?

09:19:11  10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Okay.  So, by way of what is required

12   here, the promotion for respect of law and justice, that is also

13   something important, as well as your punishment.

14           With that being said, I'll give you the

09:19:31  15   opportunity to address what I've just laid out, some of my

16   concerns.  Ms. Cahee.

17           THE DEFENDANT:  For one, I would like to say when the

18   hurricane came I was the owner of my home; and they came out and

19   they assess the damage because my whole -- I'm sorry, my

09:19:57  20   neighborhood in its entirety was flooded.  So, that wasn't me

21   defrauding because there was damage.

22           A lot of my receipts, they were not fraud.  I

23   stayed in a hotel for a month, and I paid $3,000 of the money

24   that FEMA gave me, and I provided receipts and everything of

09:20:23  25   that nature.

1          And like it's been said, yes, everything was not

2   true; but some of it was true.  So, like my lawyer said, at the

3   time I was going through some things.  I was going through some

4   things.  I wasn't trying to steal from the government; but

09:21:04   5   financially -- so, I did what I thought would help me and my

6   son.

7          I regret it.  I regret it.  I've talked to my son

8   about this.  He's about to graduate.  That's my only child.

9   He's all I really have besides my mom and family but -- all he

09:21:56   10   really has.  He's a good kid.  I just want to be able to see him

11   graduate high school.  He's going to college.  I just need to be

12   there for him.

13          I'll pay the money back.  That's not a problem.

14   Even my family, they're willing to help me.  And I know what I

09:22:37   15   did, it wasn't right.  I know that.  But considering the

16   situations at the time, I felt that that was the help that I

17   needed; and that was a way for me to get it.

18          If I could go back, of course, I would not do it.

19   It's not worth it.  I'm not somebody that always goes out and

09:23:13   20   gets in trouble.  I go to work.  I deal with students all the

21   time.  I go home.  I don't even go out to clubs or anything.

22          I'm sorry.  I just -- I just pretty much stay

23   with my family, my son.  And like I said, he's all I have; and

24   I'm all that he has.  He needs me.  I want to see him go to

09:23:51   25   college and graduate because he's such a good kid.

1                    It hurts me to even have to tell him what's going

2    on.  I disappointed him, and I feel horrible for that.  Just

3    give me the chance, I'll pay it back.  I'll pay it back.  I'll

4    make the payment arrangements, whatever I need to do, to make

09:24:48   5    sure the government gets their money back.

6                    I just can't -- I can't be -- because I've

7    already lost a child in 2018.  This is going to be --

8              THE COURT:  Anything else, Ms. Cahee?

9              THE DEFENDANT:  (Indicated no.)

09:25:27   10              THE COURT:  Anything else from the government?

11              MR. DAY:  No, your Honor.

12              THE COURT:  Counsel?

13              MR. COBB:  No, your Honor.

14              THE COURT:  One of the things that the Court also

09:25:52   15    notes, that this is a criminal history category of II.  This is

16    not a first offense when it comes to theft by this defendant.

17    The Court notes that information in the presentence

18    investigation report, as well.

19                    The Court -- the Court has considered the

09:26:29   20    guidelines and finds a departure is warranted based upon

21    mitigating circumstances.

22                    Pursuant to the Sentencing Reform Act of 1984, it

23    is the judgment of the Court that the defendant is hereby

24    committed to the custody of the Bureau of Prisons to be

09:26:45   25    imprisoned for a term of five months.

1          Upon release from imprisonment, the defendant

2    shall be placed on supervised release for a term of two years.

3          Within 72 hours of release from the custody of

4    the BOP, the defendant shall report in person to the probation

09:27:00    5    office in the district to which the defendant is released.

6          While on supervised release, the defendant shall

7    not commit another federal, state, or local crime; shall comply

8    with the mandatory standard conditions of supervision as

9    approved by the Judicial Conference and adopted by this Court

09:27:15    10    under General Order Number 2017-01; and shall abide by any

11    mandatory conditions required by law.

12          You must participate in an outpatient substance

13    abuse treatment program and follow the rules and regulations of

14    that program.  The probation officer will supervise your

09:27:30    15    participation in the program, including the provider, location,

16    modality, duration, and intensity.  You must pay the cost of the

17    program if financially able.

18          You may not possess any controlled substance

19    without a valid prescription.  If you do have a valid

09:27:43    20    prescription, you must follow the instructions on the

21    prescription.  You must submit to substance abuse testing to

22    determine if you have used a prohibited substance, and you must

23    pay the costs of testing if financially able.  You may not

24    attempt to obstruct or tamper with the testing methods.

09:27:59    25          You may not use or possess alcohol.  You may not

1  knowingly purchase, possess, distribute, administer, or

2  otherwise use any psychoactive substance, including synthetic

3  marijuana or bath salts, that impair a person's physical or

4  mental function, whether or not intended for human consumption

09:28:15  5  except as with the prior approval of the probation officer.

6          You must provide the probation officer with

7  access to any requested financial information and authorize the

8  release of any financial information.  The probation officer may

9  share financial information with the United States Attorney's

09:28:29  10  Office.  You must not incur new credit charges or open

11  additional lines of credit without the approval of the probation

12  officer.

13          The Court finds that the defendant does not have

14  an ability to pay a fine, and the Court will waive the fine in

09:28:43  15  this case.  It is further ordered that the defendant shall pay

16  to the United States a special assessment of $100.  It is

17  further ordered that the defendant shall pay restitution in the

18  amount of $43,510.88 to FEMA Lock Box.

19          Having assessed the defendant's ability to pay,

09:28:57  20  payment of total criminal monetary penalties shall be due as

21  follows:  The defendant shall begin payment immediately.

22  Balance due at 50 percent of any wages earned while in prison in

23  accordance with the BOP's Inmate Financial Responsibility

24  program.

09:29:12  25          Any balance remaining after release from

imprisonment shall be due in monthly installments of $300 to

commence 30 days after release from imprisonment to a term of

supervision.  Payment is to be made to the United States

District Clerk, Southern District of Texas.

09:29:26

Ms. Cahee, you can appeal your conviction if you

believe your guilty plea was unlawful or involuntary or if there

was some other fundamental defect in the proceeding that was not

waived by your guilty plea.

Under some circumstances, the Defendant also has

09:29:47

the right to appeal the sentence.  However, a defendant may

waive that right as part of a plea agreement; and you have

entered into a plea agreement which waived some or all of your

rights to appeal the sentence itself.  Such waivers are

generally enforceable; but if you believe the waiver itself is

09:29:59

not valid, you can present that theory to the appellate court.

If you appeal, that appeal must be filed within

14 days of the entry of judgment.  If you cannot afford to pay

the costs of appeal, you can ask to proceed without payment of

costs; and you have the right to have an attorney appointed to

09:30:13

represent you on appeal if you cannot afford an attorney.

In regards to the sentence that this Court has

imposed here today, Ms. Cahee, this is not the first time that

you stood in front of a judge for misconduct.  As I pointed out,

you were previously arrested and convicted of shoplifting.  That

09:30:31

should have been your blinking red light as to conduct like

1  this.  I hope that this is the last time that you will stand

2  before a judge.

3          You've pointed out and I took note of the fact

4  that you have a son.  Real world decisions and actions have

09:30:47  5  consequences; and if he learns, at least, from watching his

6  mother real world decisions and actions have consequences,

7  perhaps, he will use this lesson and avoid a fate like this.

8          With that being said, anything else from the

9  government?

09:31:02  10          MR. DAY:  Your Honor, just as to the categories of

11  restitution, $35,678.40 will go to the FEMA program; and then,

12  $7,832.48 would go to Health and Human Services.

13          THE COURT:  So noted.

14          Anything else from the defense?

09:31:20  15          MR. COBB:  Your Honor, will the government have any

16  objection to a surrender date?  Her son graduates at the end of

17  May.  Just a little bit more time for her to attend the

18  graduation and to get her affairs in order before she surrenders

19  to serve her five months.

09:31:40  20          MR. DAY:  The government is unopposed.  She's,

21  obviously, violated her conditions before; but I believe the

22  Court admonished her prior as to what would happen if she did so

23  again.  So, the Government is unopposed.

24          THE COURT:  Ms. Cahee, your lawyer has asked that you

09:32:04  25  be allowed to report to prison as opposed to being taken into

1  custody today.  You previously violated my conditions, and you

2  were brought back to this Court, and we had a discussion about

3  that.

4            The only reason -- the only reason that I am not

09:32:22  5  ordering you to prison today is not for you, it's for your son.

6  He deserves to have his mother at his graduation, and that is

7  why I'm going to allow you to voluntarily report.

8            However, if I am informed that you violated any

9  of the conditions of your pretrial or now bond, I will order --

09:32:44  10  issue an order for your immediate arrest.

11            Do you understand?

12            THE DEFENDANT:  Yes, I understand.

13            THE COURT:  Very well.

14            Anything else from probation?

09:32:52  15            THE PROBATION OFFICER:  A specific date?  That way we

16  know.

17            THE COURT:  A specific date what?

18            THE PROBATION OFFICER:  That she'll surrender.  I

19  don't know when the graduation --

09:32:59  20            THE COURT:  When is the graduation?

21            THE DEFENDANT:  May 28th.

22            THE COURT:  Okay.  Post-May 28th.

23            THE PROBATION OFFICER:  Okay.

24            THE COURT:  Very well.

09:33:06  25            That being said, we're adjourned.  You're

1    excused.

2             MR. DAY:  Thank you, your Honor.

3             MR. COBB:  Thank you.

4        (Proceedings concluded at 9:33 p.m.)

5

6

7

8

9                  C E R T I F I C A T E

10

11        I certify that the foregoing is a correct transcript

12    from the record of proceedings in the above-entitled matter, to

13    the best of my ability.

14

15    By: /s/*Gayle L Dye*                    *05-27-2022*

16             Gayle L. Dye, CSR, RDR, CRR        Date

17

18

19

20

21

22

23

24

25